

FILED
2020 Nov-09  AM 11:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | |
| ENGIE SERVICES INC. f/k/a COFELY SERVICES, | ) ) ) ) | COMPLAINT |
| Defendant. | ) ) ) | JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sex (male) and race (Black), and to provide appropriate relief to Black male employees, Rodney Cosby and Arterrious Mays, who were adversely affected by such practices. As alleged with greater particularity in paragraphs eleven (11) through fifteen (15) below, Defendant Engie Services Inc., ("Defendant" or "Engie")—formerly known as Cofely Services—subjected Cosby and Mays to harassment because of sex (male) and/or race (Black) at Defendant's Birmingham, Alabama facility, and failed to take prompt, remedial action to stop the harassment.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5(f)(1) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the Southern Division of the United States District Court for the Northern District of Alabama.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. Section 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant has continuously been an Alabama corporation doing business in Jefferson County, Alabama, and has continuously employed over 500 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6.      More than thirty days prior to the institution of this lawsuit, Dewey Kulzer filed a third-party charge of discrimination with the Commission alleging violations of Title VII by Defendant.

2

7.      On April 1, 2020, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.      In its efforts to conciliate, the Commission engaged in communications with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9.      On April 16, 2020, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10.     All conditions precedent to the institution of the lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11.     From approximately at least as early as May 2015 until at least December 2015, Defendant engaged in unlawful employment practices at its Birmingham, Alabama facility in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1) and 2000e-2(a).

12.     Specifically, Defendant subjected Cosby and Mays, Black males who worked at Defendant's Birmingham facility, to severe, pervasive, unwanted, degrading and offensive race and/or sex harassment, based on their sex and/or race. Cosby was hired in January 2015 and was subjected to both unlawful sex and race harassment. Mays began working for Defendant in 2013 and was subjected to unlawful sex harassment.

13.     The unlawful race and sexual harassment, which was perpetrated by Defendant's supervisors and employees, included, but was not limited to, the following unwelcomed conduct

3

that created a hostile work environment:

    a)      Cosby and Mays were subjected to numerous sexually derogatory comments and to abusive behavior including but not limited to inappropriate jokes and unwelcome touching, because of their sex. Cosby was subjected to numerous racially derogatory comments and to abusive behavior including but not limited to inappropriate comments because of his race.

    b)      Defendant's management and supervisory officials, including David Cappiello (Caucasian male) and Ron Rizzo (Caucasian male), were aware of and participated in the harassment and failed to take prompt corrective action to stop the harassment and prevent it from recurring.

    c)      Cosby was subjected to racially offensive jokes and inappropriate comments by Rizzo. Beginning at least as early as May 2015, Cosby's supervisor Rizzo subjected him to discriminatory behavior on a daily basis. For example, Rizzo would ask African American male employees, "Do you know why Black men don't eat pussy?" Rizzo would humiliate African American workers in front of Caucasian coworkers by making inappropriate comments about their race. On one occasion, Cosby and Mays were asked by Rizzo, "Why do you people wear your pants like that?" referring to how baggy they wore their pants.

    d)      Cappiello  would often make racial comments to or about workers of color. For example, Cappiello returned from vacation in Puerto Rico and said that his tan was almost as "black" as Cosby's skin. Cosby heard Cappiello call Carlos Hernandez, a Hispanic male, a wetback.

    e)      On October 30, 2015, while Cosby was getting a drink of water, Rizzo thrust his fingers up between the cheeks of Cosby's buttocks, penetrating his anus.  After being violated, Cosby turned around and saw Rizzo standing behind him smiling. Cosby asked him, "What the

4

f**k?" Rizzo laughed and walked off. Cosby immediately reported the incident to his shift supervisor who then reported the incident to Defendant's management within days of the assault. After meeting with Defendant's site manager to discuss the incident, Cosby filed a police report.

        f)      This was the second time Rizzo had touched Cosby inappropriately. The first occasion occurred earlier in 2015 and was very similar in nature to the second. On that occasion Rizzo claimed he intended it as a joke and Cosby told him not to do it again.

        g)      Around mid-2015, Rizzo came up behind Mays while he was working and pushed his groin up against Mays' buttocks. Mays responded, "What the f**k!" In response to this exclamation, Rizzo just smiled.

        h)      In early November 2015, only days after Rizzo had assaulted Cosby the second time, Mays was holding a broken stick between his legs. Rizzo walked up and grabbed it and smiled.

        i)      On numerous occasions Kulzer heard Cappiello refer to African American employees as "stupid n*****s" and "dumb n*****s."

        j)      Defendant failed to take prompt remedial action to prevent or correct harassment by its employees, including its management and supervisory employees, directed at Cosby and Mays, who were subjected to sex and race harassment.

        14.     The practices complained of in paragraph 13 continued until after Kulzer's EEOC charge of discrimination was filed on or about November 16, 2015. Rizzo was not terminated until after the filing of Kulzer's charge of discrimination. Cappiello was transferred but never subjected to discipline for any of his harassing behavior and is still employed by Defendant.

        15.     Defendant's supervisors were aware of and participated in ongoing race and sexual harassment on its premises and failed to take prompt remedial action. Defendant failed to take

sufficient prompt or effective action to stop Rizzo from continuing to engage in harassing behavior, which led to continued harassment of and unwelcome sexual touching of Mays and Cosby. Defendant took no action to stop Cappiello's harassment. Defendant created and maintained a hostile environment where harassing conduct was frequent, open, and notorious and where no recourse appeared to be available to the victims.

16.     The effect of the practices complained of in paragraph(s) eleven (11) through fifteen (15) above has been to deprive Cosby and Mays of equal employment opportunities and otherwise adversely affected their status as employees because of their sex and/or race.

17.     The unlawful employment practices complained of in paragraphs eleven (11) through fifteen (15) above were intentional.

18.     The unlawful employment practices complained of in paragraphs eleven (11) through fifteen (15) above subjected Cosby to a hostile work environment based on his sex and/or race and subjected Mays to a hostile work environment based on his sex.

19.     The unlawful employment practices complained of in paragraphs eleven (11) through fifteen (15) above were done with malice or with reckless indifference to the federally protected rights of Cosby and Mays.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in race and sexual harassment, and any other employment practices which discriminate on the basis of race or sex.

6

B.      Order Defendant to institute and carry out policies, practices, and programs which

provide equal employment opportunities for persons protected from discrimination and

for persons who oppose conduct prohibited by Title VII, and which eradicate the effects

of its past and present unlawful employment practices.

C.      Order Defendant to make whole Cosby and Mays, by providing, as appropriate,

compensation for past and future nonpecuniary losses resulting from the unlawful

practices complained of in paragraphs eleven (11) through fifteen (15) above, including

emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in

amounts to be determined at trial.

D.      Order Defendant to pay Cosby and Mays punitive damages for its malicious and

reckless conduct described in paragraphs eleven (11) through fifteen (15) above, in

amounts to be determined at trial.

E.      Grant such further relief as the Court deems necessary and proper in the public interest.

F.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

RESPECTFULLY SUBMITTED,

Sharon Fast Gustafson
General Counsel

Gwendolyn Young Reams
Associate General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street E
Washington, DC 20507

7

MARSHA RUCKER (PA Bar No. 90041)
Regional Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street, South
Birmingham, Alabama 35205
Telephone: (205) 651-7021
Facsimile: (205) 212-2041